[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a petition for a writ of habeas corpus filed by Samuel L. Spivey, hereinafter the "Petitioner", dated July 6, 2000 which was amended by an amended petition dated February 26, 2002 filed on March 1, 2002. The facts underlying the criminal trial of the Petitioner in Superior Court for the Judicial District of Middlesex are clear. The Petitioner was arrested on or about May 5, 1996 and charged with nine counts of sale CT Page 8203-cj of narcotics (crack cocaine) by a non-drug dependent person (C.G.S. § 21a-278 (b)) and/or the sale of narcotics in a school zone, (C.G.S. § 21a-278 (a)(b)). The State moved to join all charges, some of which incidents occurred on different days, but the Court ordered that the State proceed on three charges of the sale of narcotics by a non-drug dependent person and the three charges involving the same incidents of sale of narcotics in a school zone. If the Petitioner had been found guilty of all nine counts against him, and sentences had been imposed consecutively, he was facing approximately 150 years in prison.
There was a three day jury trial before Arena, J. on October 9, 10, and 17, 1997. On October 17, 1997, the jury returned guilty verdicts on all six counts. On December 12, 1997, Judge Arena sentenced the Petitioner to a total effective sentence of 18 years. The basis of the arrest of the Petitioner was pursuant to a "sting" operation conducted by the Middletown, Connecticut police in which an undercover police officer purchased the crack cocaine from various sellers on Middletown streets and in which on some occasions a confidential informant was used as part of the sting operation. The undercover police officer would buy the crack cocaine from the seller, in this case the Petitioner, with marked money. The undercover officer was wired so that two other officers heard the transactions and recognized both the Petitioner's voice and later picked him out of a photo array. At the habeas trail held on June 18, 2002, it was testified that the Petitioner sold the drugs for 20 or 30 dollars each. However, in the appeal of the conviction, 53 Conn. App. 653, 654
(1999) the Appellate Court stated that a normal purchase was for $20 but also stated that one of the officers listening by wire to the conversation" . . . heard the defendant negotiate the sale of an `8-ball' of cocaine for $170.00 and that the defendant said that he would be selling until 5:00 am."
The Petitioner was represented prior to trial and at trial by Attorney William Grady who at the time of trial had practiced law for approximately 15 years and was experienced in the trial of not only criminal cases but specifically cases in which the sale of drugs was charged. The habeas petition claims that Attorney Grady
"a. failed to properly investigate and offer evidence of Petitioner's condition as a drug dependent person, exposing him to charges and sentencing ranges beyond any potential culpability he carried;
b. The trial attorney failed to call witnesses, including the Government's purported informant, Marissa, and other parties with whom undercover Officer Batts, Middletown Police Department, purchased narcotics, that would challenge the credibility of the Government's case." CT Page 8203-ck
The Petitioner's counsel stated he would not press the claims in paragraph b at the habeas trial, and he did not. Attorney Grady testified that Marissa did not participate in any of the drug sales for which the Petitioner was charged and convicted, which may have been the reason for not pressing these claims.
The issue then becomes whether or not Attorney Grady properly investigated and offered evidence of Petitioner's condition as a drug dependent person. C.G.S. § 21a-278 (b) provides for a mandatory minimum sentence of five years if the seller of the narcotics is a non-drug dependent person, and violation of C.G.S. § 21a-278 (a)(b) (selling in a school zone) carries a mandatory minimum of three years imprisonment.
 STANDARD OF REVIEW
"For the Petitioner to prevail on his claim of ineffective assistance of counsel, he must establish both that his counsel's performance was deficient and that there is a reasonable probability that, but for counsel's mistakes, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984); Johnsonv. Commissioner of Corrections, 58 Conn. App. 482, 484 (June 27, 2000).
 ISSUES
1. Was Attorney Grady Ineffective as Defined Under Strickland, Supra?
The Court bases much of its decision on the credibility of the witnesses, namely their demeanor on the witness stand, their ability to recall certain events, the consistency or inconsistency of their statements or testimony, the manner in which they respond to questions on cross-examination as well as direct examination, the conflict of their testimony with other testimony and the other evidence in the case, including the exhibits, and the over all reliability of their testimony. In this regard the Court found Attorney William Grady's testimony to be credible and the Petitioner's testimony to be less than credible. The Court makes the following findings:
(a) The Petitioner committed the offenses for which he was charged between December 29, 1995 and January 11, 1996.
(b) He was arrested by the Middletown Police at the beginning of May 1996.
(c) Attorney Grady was appointed as a Special Public Defender shortly CT Page 8203-cl after the Petitioner's first appearance in court. Attorney Grady promptly, on June 4, 1996, requested that the Petitioner be evaluated by the Connecticut Alcohol and Drug Abuse Commission (CADAC) for alcohol or drug dependence on the dates of his sale of the drugs.
(d) The evaluation was conducted on June 28, 1996 as close as possible to the dates of sales to determine whether or not the Petitioner was drug dependent at the time of the commission of the crimes. In a report dated August 14, 1996, CADAC's evaluation found that the Petitioner was not drug dependent at the time of the commission of the crimes.
(e) The Petitioner's mother with whom the Petitioner lived during all relevant times hereof was interviewed by Attorney Grady. She told him that the Petitioner used drugs from time to time, but he was not drug dependent at any time.
(f) Attorney Grady then interviewed the mother of the Petitioner's child who did not indicate that the Petitioner was drug dependent at any time.
(g) Attorney Grady in his investigation could find no one who would state that the Petitioner was drug dependent at any time. In addition, the Petitioner told the CADAC evaluator that he was tired but never indicated that he was drug dependent.
(h) During all relevant times, the Petitioner had a job for a period of one to one and a half years which employment was never interrupted because of the Petitioner's use of drugs, further evidence that he was not drug dependent.
(i) The Petitioner had claimed that he had a drug habit of $400-$500 a day. This is inconsistent with his testimony and the testimony of the police that they would buy drugs for $20 or $30 at a time. With this and his salary, he could not afford to pay $400-$500 a day to satisfy his habit. This also is inconsistent with his claim of being drug dependent.
(j) According to the CADAC report (Respondent's Exhibit 8), "During processing at DOC, following his arrest in May, the defendant denied any use of substances." Also, some time prior to November 4, 1996, the Petitioner wrote a letter to the judge at the Middletown J.D. and although the judge did not read it, he sent it directly to Attorney Grady who stated in a letter to the Petitioner, Respondent's Exhibit 3, dated November 4, 1996: "In virtually the first paragraph you admit to exchanging drugs for sex with Marisa sometime at the end of December. Don't you realize that what you've just admitted to a judge (if he had read it) is a crime . . ." CT Page 8203-cm
(k) Attorney Grady met with the Petitioner at least fourteen times and sent him numerous letters with advice and information regarding the case. See Respondent's Exhibit 3 (Letter from Attorney Grady to Petitioner dated November 4, 1996); Respondent's Exhibit 4 (Letter from Attorney Grady to Petitioner dated February 3, 1997); Respondent's Exhibit 5 (Fax to the Petitioner from Attorney Grady dated July 7, 1997); Respondent's Exhibit 6 (Letter from Attorney Grady to the Petitioner dated September 12, 1997); and Respondent's Exhibit 7 (Letter from Attorney Grady to the Petitioner dated October 1, 1997).
(l) In the sentencing by Judge Arena on December 12, 1997, the court stated: . . . . . There was no evidence of drug dependency upon which I could instruct the jury. . . . At another point Judge Arena complimented Attorney Grady for doing an effective job as the Petitioner's attorney despite all the obstacles that the Petitioner put in his way.
From the totality of the evidence, much of which is set forth above, this Court concludes that the Petitioner has failed to satisfy his burden of proving that counsel's performance was below the standard of criminal defense attorneys in the area. In fact, this Court commends Attorney William Grady for being an effective advocate for his client, the Petitioner in the criminal proceedings against him.
2. Would the Result of the Proceeding Have Been Different?
Assuming arguendo that Attorney Grady had made mistakes and was ineffective, the Petitioner would still have to meet the second prong ofStrickland, supra; namely, that but for counsel's mistakes, the result of the proceeding would have been different. There is no question that the State had a strong case against the Petitioner. At trial the undercover police officer to whom he sold the crack cocaine testified to the sale as did the officers who were listening in via a wire which had been placed with the undercover officer and who identified both the Petitioner's voice and selected his photograph from a photo array. This amounted to three eyewitness identifications of the Petitioner selling the crack cocaine. As for the defense of being drug dependent, Attorney Grady investigated all possible witnesses to the alleged drug dependency of the Petitioner. The Petitioner did not provide any other witnesses. The witnesses to whom Attorney Grady did talk were the Petitioner's mother and the mother of his child, neither of whom could say that he was drug dependent. In addition, his statement to the people at the Department of Corrections that he was not drug dependent, didn't use illegal drugs, and his letter to the judge all would have worked against such a defense, and if the State had called as a witness the author of the CADAC report, her testimony would have been devastating against the Petitioner. Even if CT Page 8203-cn Attorney Grady had made some mistakes, which the Court finds he did not, with the overwhelming evidence against him, the Petitioner would still have been found guilty at trial. Therefore, the Petitioner has not sustained his burden of proving the second prong of Strickland, supra, namely that the result of the proceeding would have been different.
In this Court's opinion, Attorney Grady did an excellent job in defending the Petitioner. He was able to secure from Judge Stanley an offer of five years imprisonment. This was later raised to eight years, and even after the State had presented its case which was solid against the Petitioner, Judge Arena indicated that if he pleaded guilty, he would probably not give him more than another year or two. Under all the circumstances, these were golden opportunities for the Petitioner to accept the offers, in particular, the first offer of five years by Judge Stanley.[1] The correspondence from Attorney Grady to the Petitioner is replete with advice that clearly indicates that the Petitioner should accept the offer of five years. Petitioner's mother and the mother of his child both urged him to accept the five year offer. The only thing that stopped him from accepting the offer was his own stubbornness. He thought that he knew better than his attorney, who is experienced in criminal defense work including defense of drug cases, the judges who offered him these plea bargains and everyone else. It is unfortunate that the Petitioner did not take advantage of the sound advice given to him and accept the offer of five years, but this Court can think of nothing else that Attorney Grady could have done to persuade the Petitioner to accept the five year offer. It is clear that Attorney Grady did the best that could be possibly done for the Petitioner.
For all of the above reasons, the habeas petition is DENIED.
 ___________________ Rittenband, JTR